Patricia **FINNEGAN**,
Plaintiff–Appellant,

v.

Richard **FOUNTAIN**,
Defendant–Appellee.

No. 89–7832.

United States Court of Appeals,
Second Circuit.

Argued March 27, 1990.

Decided Oct. 1, 1990.

Arthur V. Graseck, Jr., Port Washington, N.Y., for plaintiff-appellant.

Caroline Levy (E. Thomas Boyle, Suffolk County Atty., Dennis E. Milton, Chief Deputy County Atty., of counsel), Hauppage, N.Y., for defendant-appellee.

Before OAKES, Chief Judge,
WINTER, Circuit Judge, and MUKASEY, District Judge.[*]

OAKES, Chief Judge:

Patricia Finnegan appeals from a judgment of the United States District Court for the Eastern District of New York, Jacob Mishler, Judge, entered on August 21, 1989, dismissing her civil rights action against police officer Richard Fountain for the use of excessive force while placing her under arrest. The primary issue on this appeal is whether the jury's finding that Fountain acted in good faith when arresting Finnegan is consistent with its findings that Fountain intentionally used excessive force and that he did so maliciously, wantonly, or oppressively. Because we conclude that these findings are so inconsistent as to impair the parties' Seventh Amendment right to a trial by jury, we vacate and remand. On remand, the district court is instructed to amend its charge regarding the excessive-force claim and to determine as a matter of law whether the qualified immunity defense bars Finnegan's claim.

## BACKGROUND

On January 8, 1982, police officer George Bodenmiller arrived at 11 Garden Lane in Commack, New York, to bring Patricia Finnegan into precinct headquarters for questioning about a stolen camera. He encountered her in the driveway while she was assisting an elderly woman into a car. When Finnegan allegedly insulted Bodenmiller and refused to go to the precinct with him, he announced that she was under arrest. Bodenmiller allowed her to take the elderly woman back inside the home, and he called for the assistance of Officer Fountain. In the meantime, Finnegan's mother, Dorothy Finnegan, arrived on the scene, allegedly shouted verbal insults at the officers, and joined her daughter inside.

Officers Bodenmiller and Fountain entered the house, allegedly with the permission of the elderly woman, to effect the arrest of Patricia Finnegan. Finnegan's version of events was that Fountain grabbed her and pushed her roughly into a wall. When her mother protested, she too was grabbed and pushed. Fountain dragged Patricia Finnegan out of the house by her hair and her arm and knocked her face and chin into the roof of his squad car. Bodenmiller and Fountain, on the other hand, testified that they made clear to Finnegan that she was under arrest before they touched her. Finnegan and her mother responded by screaming obscenities at them, and Finnegan's mother stepped between Bodenmiller and Finnegan to prevent the arrest and kicked Fountain in the groin three times. When the officers noticed two Doberman pinschers and a German shepherd starting to snarl from behind a child-protector gate, they hurriedly pulled the Finnegans out of the house.

Patricia Finnegan was arrested for criminal possession of stolen property and resisting arrest. Her mother was arrested

[*] Michael B. Mukasey, United States District Judge for the Southern District of New York, sitting by designation.

for obstructing governmental administration, assault, and resisting arrest.

Patricia Finnegan brought claims in the district court against Fountain, Bodenmiller, another police officer, the Suffolk County Police Commissioner, and Suffolk County, alleging pursuant to 42 U.S.C. § 1983 and other civil rights statutes multiple violations of her rights under the First, Fourth, Fifth and Fourteenth Amendments of the Constitution, as well as malicious prosecution under state law. The case was consolidated with a similar action brought by Finnegan's mother and went to trial in December 1988.

Following closing arguments, the jury received a special verdict form concerning Patricia Finnegan's claims. Questions four and five inquired whether the police officers used excessive force. The jury was instructed that excessive force under New York law "means greater force than is reasonably necessary under all the circumstances to effect the arrest." Tr. Trans. at 1069.[1] Question four asked: "Did Fountain and/or Bodenmiller intentionally use excessive force in making the arrest of Patricia Finnegan?" The jury answered "yes." Question five asked: "Did either or both of the following defendants use excessive force in arresting Patricia Finnegan?" The jury answered "yes" for Fountain and "no" for Bodenmiller. Taken together, the answers to questions four and five meant that the jury found that Fountain intentionally used excessive force.

Question six of the special verdict was directed at Fountain's and Bodenmiller's defense of qualified immunity, or what the district court called the "good faith" defense. The jury was instructed as follows:

> If the defendant reasonably believed that he was acting in good faith in the manner in which he performed his duties and he believed that it was in accordance with established law, then he establishes the good faith defense.

. . . .

> [D]id the police officer who is charged with using excessive and unreasonable force at the time he was making the arrest believe that he was using reasonable force and sufficient force under all the circumstances to effect the arrest?

*See* Tr. Trans. at 1070–71. Question six, subpart (c), asked: "Did the defendants have a good faith belief that there was probable cause to believe that: . . . (c) the force used in placing Patricia Finnegan under arrest was reasonably necessary to place her under arrest?" The jury responded "yes" to this question.

After the jury returned the verdict, the district court expressed doubt that the good faith defense as a matter of law could be invoked against an excessive force claim, apparently because both the claim and the defense involve similar and possibly duplicative inquiries into whether force was used reasonably. The court observed that if it concluded that the defense did apply, Finnegan's action would have to be dismissed without the jury having had the opportunity to pass on the issues of causation and damages. If the immunity defense was later found on appeal not to apply, the court noted, a whole new trial would be necessary. *See* Tr. Trans. at 1145–48. Concluding that it was satisfied from its preliminary research that the defense was unavailable, the court directed the jury the following day to render a second special verdict on the issues of causation and damages.

In the second special verdict, the jury found that Fountain's excessive use of force caused injury to Finnegan in the amount of $25, but also awarded punitive damages of $5,500, finding that Fountain had acted "maliciously or wantonly or oppressively." The district court then entered judgment in favor of Finnegan. However, in response to Fountain's motion

1. The district court paraphrased for the jury New York Penal Law § 35.30(1) (McKinney 1987):

    A police officer or a peace officer, in the course of effecting or attempting to effect an arrest, or of preventing or attempting to prevent the escape from custody, of a person whom he reasonably believes to have committed an offense, may use physical force when and to the extent he reasonably believes such to be necessary to effect the arrest. . . .

for a judgment notwithstanding the verdict, the court reversed course and determined that the good faith defense did indeed apply. On August 21, 1989, the court entered judgment dismissing Finnegan's complaint.

## DISCUSSION

### A. *Consistency of the Special Verdicts*

Our review of the proceedings before the district court leaves us with an unmistakable impression that the jury was confused in its findings. The jury concluded in question six that Fountain had acted in good faith, applying no more force than he thought necessary, but, on the very next day, it found that Fountain acted maliciously, wantonly, or oppressively.

The Seventh Amendment right to a jury trial precludes entry of a judgment based on an inconsistent jury verdict that thereby disregards any material jury finding. *See Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 890–91 (2d Cir.1988). If an irreconcilable inconsistency is not noticed until after the jury has been dismissed, an appellate court on review must vacate the judgment and order a new trial. *See id.* at 891.

We are of course mindful that "[w]here there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962). Before we consider whether there is any view of the case that might reconcile the jury's findings, we pause to observe that neither of the parties moved before the district court or have requested on this appeal that a new trial be ordered on grounds of inconsistency of the verdicts. In fact, both parties seek to explain away the seeming inconsistencies to justify a verdict in their favor. We are presented with the issue, therefore, whether the parties' failure to request a new trial by post-trial motion or on appeal precludes us from considering whether the verdicts were inconsistent.[2] At least one circuit has found that it does. *See Alderman v. Tandy Corp.*, 720 F.2d 1234, 1236–37 (11th Cir.1983). We do not agree. When the bases for a final judgment are self-contradictory, we think the preferable rule to be that an appellate court has the power to review that judgment, notwithstanding failure of the parties to object or to move before the district court. *See Fugitt v. Jones*, 549 F.2d 1001, 1004–05 (5th Cir.1977) (failure to move for new trial before district court does not preclude appellate review of whether answers to special verdict questions were inconsistent and thus failed to support judgment entered); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2515 (1990).

We are unable to reconcile the second verdict with the first. The jury's finding in the second verdict that Fountain acted "maliciously or wantonly or oppressively" plainly contradicted its answer to question six that Fountain acted with a "good faith belief" that the force he used was reasonably necessary and was, as the district court instructed, "in accordance with established law."[3] *See Bates v. Jean*, 745 F.2d 1146, 1152 (7th Cir.1984) (jury finding that officer's actions were shocking, callous, or brutal not reconcilable with finding that officer did not know actions were unlawful).[4]

Fountain argues that even if the first and second verdicts are inconsistent, we

**2.** In *Auwood,* we stated that both the district court and appellate court are empowered to order a new trial. In that case, however, the appellants requested a new trial by post-trial motion to the district court and in their appeal, on grounds that the instructions to the jury were prejudicially confusing and created inconsistent answers. *See* 850 F.2d at 888, 890.

**3.** The consistency of the jury verdicts must be considered not only in light of the questions themselves, but also in light of the judge's instructions to the jury. *See, e.g., Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 118–22, 83 S.Ct. 659, 665–67, 9 L.Ed.2d 618 (1963).

**4.** Because we find the second verdict inconsistent with the first, we need not consider whether the answers to questions four and five are consistent with the answer to question six.

may not properly take into account anything the jury found in the second verdict, because it was error for the district court to have even submitted it to the jury. The district court erred, Fountain suggests, because the finding of the good faith defense in the first verdict was decisive of the outcome of the case, and no further fact-finding should have been made. *See McCollum v. Stahl*, 579 F.2d 869, 870–71 (4th Cir.1978) (resubmission of questions to jury not permissible, despite apparent inconsistency, where answer to one question is decisive of the case), *cert. denied*, 440 U.S. 912, 99 S.Ct. 1225, 59 L.Ed.2d 460 (1979). *But see Santiago–Negron v. Castro–Davila*, 865 F.2d 431, 444 (1st Cir.1989) (resubmission of questions to jury permissible even if answers to first questions were decisive so long as the answers were "inconsistent under any view"). Whether or not it was error for the district court to have submitted the second verdict, we cannot give effect to one jury finding directly contradicted by another the very next day. To do so would be inconsistent with the parties' right to trial by jury. We cannot pretend the jury thought Fountain acted in good faith, and allow entry of judgment upon this basis, given the jury's subsequent finding that he acted maliciously, wantonly, or oppressively. Even if the district court should not have allowed the jury to make the latter finding, this does not inspire any more confidence in the former. Therefore, we conclude that we may properly consider the jury's findings in the second verdict and, accordingly, vacate the judgment due to the irreconcilability of the answers to the first and second special verdicts.

### B. *Instructions on Remand*

#### 1. *Special Verdict Questions*

Ordinarily, we do not consider issues not raised below or on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). But since we are remanding this case for a new trial, we take this opportunity to address

several issues as to which rulings by the district court were debatable.

■ First, the district court instructed the jury that the reasonableness test of New York Penal Law § 35.30(1) is the standard for determining whether excessive force was used for purposes of answering questions four and five. As originally made clear in our decision in *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), not every instance of force proscribed by state law rises to the level of a constitutional violation so as to support a section 1983 action. *See also King v. Blankenship*, 636 F.2d 70, 73 (4th Cir.1980). Now, under *Graham v. Connor*, 490 U.S. 386, ——–——, 109 S.Ct. 1865, 1867, 104 L.Ed.2d 443 (1989), a constitutional violation is established only by showing that the use of force was "objectively unreasonable" under the Fourth Amendment.

■ Second, the district court submitted the issue of the qualified immunity defense to the jury to decide. Once disputed factual issues are resolved, the application of qualified immunity is, however, ultimately a question of law for the court to decide. *See Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.1990). As Judge Winter, dissenting on other grounds in *Warren*, explained:

> It is in essence a legal decision whether, on the basis of the law as it existed at the time of the particular incident, the lawfulness of the officer's conduct was reasonably clear or was a matter of doubt. Juries are hardly suited to make decisions that require an analysis of legal concepts and an understanding of the inevitable variability in the application of highly generalized legal principles. Moreover, such an analysis would seem to invite each jury to speculate on the predictability of its own verdict.

*Id.* at 77 (Winter, J., dissenting). Accordingly, on re-trial, it is for the district court to decide whether Fountain may benefit from the immunity defense.[5]

---

**5.** The district court did not decide this issue below, notwithstanding its grant of judgment

n.o.v. on the basis of the immunity. The jury was instructed on the immunity question and

■ Third, the district court's formulation of the substantive legal standards governing the scope of the qualified immunity defense was in error. The phrasing of question six to include a "good faith" component within the qualified immunity is at odds with our previous determination that "[t]he proper standard for proof of such immunity ... is not good faith but rather objective reasonableness." *Calamia v. City of New York*, 879 F.2d 1025, 1036 (2d Cir.1989). Question six and its accompanying instructions impermissibly invited consideration of Fountain's subjective thoughts, instead of what a reasonable police officer, given the situation Fountain was in, should have thought.[6]

■ Finally, we believe the district court erred in phrasing subpart (c) of question six to inquire whether Fountain had a good faith belief that he had "probable cause" to believe that the force he used was reasonably necessary. Probable cause is not an element of the immunity defense against an excessive force claim. The district court's inclusion of a probable cause component was apparently the result of confusion with parts (a) and (b) of the same question, which inquired whether there was probable cause for the arrests to have been made.

### 2. Availability of Qualified Immunity Defense Against an Excessive–Force Claim

■ We take this opportunity to consider an issue decided by the district court and almost certain to appear again on re-trial: whether qualified immunity is generally available as a matter of law as a defense against a claim of excessive force by a law enforcement officer in effecting an arrest.[7] While one federal court of appeals has concluded that it is not, *see Holt v. Artis*, 843 F.2d 242, 246 (6th Cir.1988), others have concluded that the defense is available. *See Brown v. Glossip*, 878 F.2d 871, 873–74 (5th Cir.1989); *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir.1988).[8] The Supreme Court meanwhile has expressly reserved judgment on this issue. *See Graham*, 490 U.S. at —— n. 12, 109 S.Ct. at 1873 n. 12. To avoid a second appeal on this issue, we decide it now and conclude that the quali-

---

determined in question six of the first special verdict that immunity applied. The district court, in granting judgment n.o.v., considered only whether the defense is generally available as a matter of law against excessive-force claims, not whether it applied on the facts of this case. We consider the general availability of the defense in the next section of this opinion.

6. Although the district court at one point cautioned the jury not to take into account what the officers subjectively believed, *see* Tr. Trans. at 1071, at another point the court instructed the jury, "An officer who claims to be acting in good faith must establish by a preponderance of the evidence that he had a good-faith belief that he was acting in accordance with established law." Tr. Trans. at 1070.

7. This issue is the primary ground of Finnegan's appeal in this case, but, as the district court noted, the jury instruction on this issue was not objected to and therefore not preserved for appeal. *See* Fed.R.Civ.P. 51. Although we have previously held that failure to object to an instruction, as in this case, does not waive appellate review of the instruction in the context of reviewing an entry of a judgment notwithstanding the verdict, *see Ebker v. Tan Jay Int'l, Ltd.*, 739 F.2d 812, 824–25 n. 17 (2d Cir.1984), the

Supreme Court in one case impliedly repudiated this position. In *City of Springfield v. Kibbe*, 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987) (per curiam), the Court declined on prudential grounds to review an issue raised in the context of an appeal from denial of a directed verdict and judgment n.o.v., because it involved an issue conceded in a jury instruction to which the party had not objected. *See* 480 U.S. at 259, 107 S.Ct. at 1115 ("We think, however, that there would be considerable prudential objection to reversing a judgment because of instructions that petitioner accepted...."); *see also id.* at 264, 107 S.Ct. at 1118 (O'Connor, J., dissenting) (citing *Ebker*). But in *City of St. Louis v. Praprotnik*, 485 U.S. 112, 118–21, 108 S.Ct. 915, 921–22, 99 L.Ed.2d 107 (1988), a plurality of the Court adopted the position of the *Kibbe* dissent to the effect that the question was preserved for review. In *Krause v. Bennett*, 887 F.2d 362, 369 (2d Cir.1989), the panel majority took the same position as the *Praprotnik* plurality.

8. The Seventh Circuit has also held the defense inapplicable to excessive-force claims by prisoners, which, under *Graham v. Connor*, 490 U.S. 386, ——, 109 S.Ct. 1865, 1873, 104 L.Ed.2d 443 (1989), are cognizable under the Eighth Amendment. *See Bates v. Jean*, 745 F.2d 1146, 1152 (7th Cir.1984).

fied immunity defense is generally available against excessive-force claims.[9]

To establish a Fourth Amendment excessive-force claim, a plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, "objectively unreasonable" under Fourth Amendment standards. *See Graham*, 490 U.S. at ——, 109 S.Ct. at 1873. The reasonableness of the force used is "judged from the perspective of a reasonable officer on the scene" and takes into account factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citation omitted). By comparison, to establish the qualified immunity defense, a police officer must satisfy one of two tests: *either* that his conduct did not violate "clearly established rights" of which a reasonable person would have known, or that it was "objectively reasonable" to believe that his acts did not violate these clearly established rights. *See Warren*, 906 F.2d at 74; *Calamia*, 879 F.2d at 1035.

Finnegan argues that the immunity defense is unavailable, because "if the finder of fact concludes that an officer has intentionally employed excessive force, knowledge that his actions violate Constitutional rights is implied." Appellant's Br. at 6. We read Finnegan's argument to state that any use of constitutionally excessive force violates "clearly established" rights, so that the qualified immunity may not shield one who has used excessive force. *See Holt*, 843 F.2d at 246. We do not agree.

Although it can be said that the right of an individual not to be subjected to excessive force is "clearly established" in the conventional sense, the Supreme Court in *Anderson v. Creighton*, 483 U.S. 635, 107

S.Ct. 3034, 97 L.Ed.2d 523 (1987), has cautioned against framing what is a "clearly established" right at this level of generality:

> The Court of Appeals' brief discussion of qualified immunity consisted of little more than an assertion that a general right Anderson was alleged to have violated—the right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances—was clearly established. The Court of Appeals specifically refused to consider the argument that it was *not* clearly established that the circumstances with which Anderson was confronted did not constitute probable cause and exigent circumstances.... [T]his refusal was erroneous.

*Id.* at 640–41, 107 S.Ct. at 3039.

In other words, to say that the use of constitutionally excessive force violates a clearly established right, according to the Supreme Court, begs the open question whether the particular degree of force under the particular circumstances was excessive. This is not to say that no act violates a clearly established right unless a factually identical action has been previously held unlawful. *See id.* at 640, 107 S.Ct. at 3039. Rather, *Anderson* advises that a middle approach is to be taken: the facts and circumstances of each case must be examined to determine whether "[t]he contours of the right ... [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent." *Id.* Accordingly, even if the jury finds Fountain to have used constitutionally excessive force, it is for the district court to determine whether the unlawfulness of his conduct

9. The issue was not considered, as Finnegan suggests, in our decision in *Fiacco v. City of Rensselaer*, 783 F.2d 319 (2d Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987). All we found in *Fiacco* was that a police officer might simultaneously be found not to have acted maliciously but also not to be shielded by qualified immunity. *See* 783 F.2d at 325–26. Although we have previously reviewed district court decisions involving excessive-force claims in which the district court instructed the jury on the qualified immunity defense, *see, e.g., Calamia v. City of New York*, 879 F.2d 1025, 1033–36 (2d Cir.1989), the issue has not previously been presented whether as a matter of law immunity is available against such claims.

should have been apparent to Fountain at the time. *See Brown,* 878 F.2d at 874–75.[10]

Because we find that the "clearly established" rights inquiry under the first prong of the qualified immunity defense is not foreclosed by a finding that constitutionally excessive force was used, we need not take up the knottier issue whether a finding that a law enforcement officer acted objectively unreasonably in the use of force forecloses a finding under the second prong of the defense that it was objectively reasonable for him to believe his actions were lawful.[11]

### CONCLUSION

The judgment of the district court is vacated and remanded for proceedings not inconsistent with this opinion.

---

**10.** In this particular case, this inquiry is complicated by the fact that the constitutional parameters of the right to be free from excessive force have changed since the time of Fountain's alleged violation of Finnegan's rights in 1982. As of 1982, Finnegan had a clearly established constitutional right under the due process clause to be free from force that "shocked the conscience." *See Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Whether conduct "shocked the conscience" was determined with reference to the amount of force used, the need for force, the extent of injury inflicted, and evidence of the officer's good faith or malice. *See id.* at 1033. Since our holding in *Davis v. Little,* 851 F.2d 605, 610 (2d Cir.1988), and the Supreme Court's decision last year in *Graham,* 490 U.S. at ——, 109 S.Ct. at 1872, however, whether Fountain's use of force was constitutionally excessive is measured under the Fourth Amendment "objective reasonableness" standard.

**11.** We pause, however, to observe a doctrinal tension in the case law on this point. While the Supreme Court has explicitly rejected the argument that a police officer may not act "reasonably unreasonably" in conducting a warrantless search of a home, it did not explain how the two standards of reasonableness under the claim and the defense differ from each other. *See*

*Anderson v. Creighton,* 483 U.S. 635, 643–44, 107 S.Ct. 3034, 3034–35, 97 L.Ed.2d 523 (1987). In *Warren v. Dwyer,* 906 F.2d 70, 76 (2d Cir.1990), we made such a distinction between the reasonableness inquiries underlying a Fourth Amendment claim for an arrest without probable cause and qualified immunity. We stated that the probable cause inquiry involved essentially an *ex post* inquiry, judging reasonableness from the "actual circumstances ... found as a matter of fact," while the qualified immunity involved an *ex ante* inquiry, judging reasonableness "from any reasonable point of view, including even a factual misperception, the officer may reasonably have harbored at the time the events took place." *Id.* at 75. It is questionable whether this same distinction holds up in the context of an excessive-force claim case, because the Supreme Court has made clear that the excessive-force inquiry is not made from an *ex post* perspective, but from the *ex ante* "perspective of a reasonable *officer on the scene*":

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," ... violates the Fourth Amendment. *Graham,* 490 U.S. at ——, 109 S.Ct. at 1872 (quoting *Johnson v. Glick,* 481 F.2d at 1033).