**Michael KERR, Plaintiff,**

v.

**New York State Trooper Miguel A. VALLE, Defendant.**

No. 92 Civ. 7150 (BDP).

United States District Court, S.D. New York.

Nov. 3, 1995.

Joseph A. Stargiotti, Maroney, Ponzini & Spencer, Tarrytown, NY, for Plaintiff.

Steven A. Morelli, Leeds & Morelli, Carle Place, NY, Vincent Leong, Assistant Attorney General, NYS Department of Law, New York City, for Defendant.

Demary Valle, Throgs Neck, NY, Pro Se.

## MEMORANDUM DECISION

PARKER, District Judge.

### FACTS

This action for the violation of civil rights under 42 U.S.C. § 1983 is before this court on Defendant's motion for summary judgment. Plaintiff, Michael Kerr ("Kerr"), alleges that Defendant, New York State Trooper Miguel Valle ("Valle"), used excessive and unreasonable force while arresting Kerr for a traffic violation. Kerr is seeking monetary relief.

The undisputed facts follow. While driving a motorcycle on May 4, 1991, Kerr was pulled over by Trooper Valle for speeding. A license check revealed that Kerr's license was suspended and Valle arrested and handcuffed Kerr. Kerr was placed in Valle's patrol car and driven to the State Police Troop–K barracks at Hawthorne for processing. He was charged with engaging in an unauthorized speed contest, aggravated unlicensed operation of a motor vehicle and resisting arrest before being released on bail. The resisting arrest charge was later dismissed and Kerr pled guilty to speeding and aggravated unlicensed operation of a motor vehicle. Kerr filed this action on October 2, 1992. A State Police internal investigation found the charges unsubstantiated.

The remainder of the facts are disputed. First, Kerr claims that when informed he was being arrested, his wallet slipped out of his hand when he raised his arms in disbelief that he was being arrested for speeding. At his deposition, Kerr testified that he obeyed Valle's request to put his hands behind his back, and that he fully cooperated with Valle. Valle claims, however, that when he informed Kerr that he was under arrest, Kerr reacted with hostility, shouted "f— it," threw his wallet into the road, pulled his arm away from Valle and stepped backwards.

Second, Kerr claims that Valle handcuffed him without incident. He asserts that Valle shouted irrationally about another speeding motorcyclist who had eluded him. Valle claims, however, that it was necessary to subdue Kerr and that he wrestled him to the ground in order to handcuff him. Deposition testimony of an eye-witness, Mark Duncan ("Duncan"), who observed the incident from the other side of the parkway, contradicts Valle's statements; Duncan asserts there was no struggle in the initial handcuffing of Kerr.

Third, Kerr claims that as he was being placed into the front passenger seat of the patrol car, Valle tried to knock his head on the roof of the car, but he instinctively ducked his head down to avoid injury. Valle denies that he attempted to knock Kerr's head on the car and claims, rather, that Kerr tried to head-butt him.

Fourth, Kerr claims that Valle threw him face down onto the front seat of the patrol car and knelt on his back. He states that, while holding his hair and collar in his left hand, Valle tilted Kerr's face sideways and began to repeatedly punch him in the face and head. He further claims that Valle shouted irrationally while punching him between ten and twenty times. Valle, however, denies that he knelt on Kerr's back and testified at his deposition that he never punched Kerr in the face. Valle claims that he laid on Kerr's back because Kerr was shouting obscenities and trying to head-butt and kick him. Duncan claims that he saw Valle kneel on top of Kerr, hold him down and repeatedly punch him between four and ten times.

Fifth, Kerr avers that he slid out of the car and ran to the road screaming for help. He states he got back into the car with Valle because he felt safer after being seen by passing motorists. Valle, however, claims that Kerr never ran from the car. Duncan testified at his deposition that he witnessed Kerr run to the road screaming for help.

Finally, Kerr claims that upon returning to the car, Valle pulled his nose and slapped his face a few times. He asserts that Valle told him that he beat him "because people need to be afraid of the police." Valle asserts that

after lying on Kerr's back, he pulled Kerr up and seat-belted him into the front passenger seat. He admits pushing Kerr's face with an open hand after securing him in the front passenger seat, but denies making any remark about people fearing police.

Troopers on duty at the Troop K-barracks on May 4, 1991 when Kerr was brought in, submitted memos dated late January 1993 to the State Police internal investigator stating that they do not recall seeing injuries to Kerr or hearing him complain of pain or mistreatment while he was detained at the barracks. Trooper Glen Williams ("Williams") submitted a memo stating that, while off duty, he stopped his car on the Sprain Brook Parkway alongside Valle's car and observed Kerr handcuffed in Valle's vehicle. Williams did not notice any injuries to Kerr nor Kerr complaining.

Valle now moves for summary judgement on the grounds that he is protected from liability by qualified immunity and there are no genuine issues of material fact.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1985)).

The responding party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. See *Pollis v. New School for Social Research,* 829

F.Supp. 584, 586 (S.D.N.Y.1993) (citing *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990)) (other citations omitted). Rather, the responding party must show the existence of a disputed material fact in light of the substantive law. See *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *McNeil,* 831 F.Supp. at 1082 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)) (per curiam) (other citations omitted). See also *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. U.S. Fire Ins.,* 804 F.2d 9 (2d Cir.1986)), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (other citations omitted).

■ The purpose of qualified immunity is to provide government officials with the ability "reasonably to anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton,* 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987) (quoting *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984)).

■ Qualified immunity shields government officials performing discretionary functions from liability for their actions that do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *P.C. v. McLaughlin,* 913 F.2d 1033, 1039 (2d Cir. 1990) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Even when the plaintiff's federal rights are clearly established, qualified immunity may still bar a plaintiff's suit if it was objectively reasonable for the public officer to believe that his acts did not violate the rights of the plaintiff. See, e.g., *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir. 1991); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987) (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). "[T]o establish the qualified immunity defense, a police officer must [show] ... *either* that his conduct did not violate 'clearly established rights,' ... or that it was 'objec-tively reasonable' to believe that his acts did not violate these clearly established rights." *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990) (emphasis in original).

■ The Second Circuit determined in *Finnegan* that the defense of qualified immunity is available to police officers defending a claim of excessive force. 915 F.2d at 822–23. Its applicability is to be decided as a matter of law by the district court, *id.* at 818, even though "a factual finding [regarding the objective reasonableness of the officer's belief] is essential to resolving the issue of qualified immunity." *Kaminsky,* 929 F.2d at 927. "The reasonableness of the force used is 'judged from the perspective of a reasonable officer on the scene' and takes into account factors such as 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is resisting or attempting to evade arrest by flight.' " *Finnegan,* 915 F.2d at 823 (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)).

■ Here, Valle does not argue that Kerr did not have a clearly established right to be free from excessive use of police force, but only that Valle acted with objective reasonableness in effecting an arrest of a hostile and resistant suspect. Valle offers the affidavit of John Penny ("Penny"), Technical Sergeant for the New York State Police and Coordinator for the New York State Police Defensive Tactics School. Although Penny avers that the amount of force used by Valle was reasonable, his analysis rests entirely on Valle's version of the facts. Similarly, the State Police Department internal investigation's determination that the charges were unsubstantiated did not take into account Kerr's or Duncan's version of the facts. Kerr testified at his deposition that he cooperated with Valle and did not resist his efforts to make an arrest. Kerr claims that he never tried to kick or assault Valle, and that Valle, without provocation, knelt on his back while he was handcuffed and repeatedly punched him in the face. Duncan, an eyewitness, corroborates most of Kerr's allegations and disputes those of Valle.

"Resolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [are] properly not decided by [a] district court on summary judgment." *Robison*, 821 F.2d at 924 (citations omitted).[1] Here, the facts in dispute create a genuine issue of material fact as to who initiated the use of force and how much force was used, rather than merely whether the force used was reasonable. Kerr and Duncan's assertions, that Valle repeatedly punched Kerr in the face while handcuffed and cooperative, if accepted by the jury, would suffice to sustain a claim of excessive force. Valle's motion for summary judgment on the grounds that he is entitled to qualified immunity and there are no material facts in dispute is denied.

In conclusion, the Defendant's motion for summary judgment is denied.

SO ORDERED.

---

1. The plaintiff does not need to have sustained serious or permanent injuries, or sought medical treatment to withstand a summary judgment motion. See *Robison*, 821 F.2d at 924.