Judge POOLER dissents by separate opinion.
LEVAL, Circuit Judge:
Plaintiff John Aczel appeals from the judgment of the United States District Court for the District of Connecticut (Dorsey, J.) granting judgment to Defendant, Police Officer Leonard Labonia, on Plaintiffs claim of use of excessive force. The case presents an unusual procedural history. The jury answered interrogatories in *54 a special verdict form, finding that Plaintiff had proved that Labonia used excessive force and that $12,078.61 in damages were proximately caused by Labonia’s acts but that Labonia was entitled to qualified immunity because he had an objectively reasonable belief that his conduct was justified under the circumstances. Treating the jury’s factual finding that $12,078.61 in damages were proximately caused by Defendant’s excessive force as if it were a general verdict awarding damages under Rule 49(b), Fed.R.Civ.P., which would be inconsistent with the jury’s finding that Defendant was entitled to qualified immunity, the district court initially rejected the verdict and ordered a new trial. Both sides appealed. Upon remand by this court, which left the district court free to reconsider its initial ruling, the district court granted Labonia’s motion for reconsideration and for judgment. Plaintiff appealed again. Because the jury unanimously found that Defendant was entitled to qualified immunity and there was no flaw in the finding that required the court to reject it, the district court acted within its discretion in entering judgment for Defendant and denying Plaintiffs motion for a new trial. We therefore affirm the judgment.
BACKGROUND
Aczel brought this action against Labo-nia and Ethan Mable, both police officers of the city of Danbury, Connecticut, alleging inter alia federal constitutional claims of false arrest and use of excessive force and state law claims of assault, false imprisonment, and abuse of process. The matter was tried before a jury in the district court. Plaintiff testified that he did not act improperly at any time. He contended that the defendants had no justification for arresting him on charges of interfering with a police officer and breach of the peace in violation of Connecticut General Statutes §§ 53a-167a and 53a-181 and that, while arresting him, the defendants choked him, kneed him in the head, and kicked him repeatedly. Defendant Labonia offered evidence that Aczel was intoxicated and resisted arrest and that the officers took necessary incremental steps to restrain and subdue him.
The court instructed the jury what facts Plaintiff needed to prove to establish that a defendant had violated his rights. Then, on the subject of qualified immunity with respect to Plaintiffs federal civil rights claims, the court properly instructed the jury, in accord with the Supreme Court’s ruling in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and without objection from Plaintiff, to the effect that a defendant had an absolute defense to liability if, at the time of his interaction with Plaintiff, the defendant had an objectively reasonable belief that his actions were justified under the circumstances.
With respect to damages, the court instructed as follows,
The fact that I charge you as to damages should not be taken as a suggestion that you should reach the question of damages. I do so only in case you decide the question of liability; that is, in favor of the plaintiff. You should not consider the question of damages unless and until you decide the issue of liability in one or more respects in favor of the plaintiff.
(Emphasis added).
With the consent of the parties, the court distributed to the jurors a special verdict form, in accordance with Rule 49(b)(1), Fed.R.Civ.P. This was in the form of a questionnaire, which asked the jurors to answer specific factual questions from which the ultimate verdict and judgment might be derived. In Part A, as to each of *55 Plaintiffs claims, the form asked whether Plaintiff had proved the facts necessary to establish a violation of his rights. As to each claim of violation of a federal constitutional right that the jury found Plaintiff had established, the form asked whether Defendant had proved entitlement to qualified immunity. For example, as to the claim of use of excessive force, question A2(a) asked whether Defendant had proved entitlement to qualified immunity by proving “a reasonable and objective belief that the force used was reasonable under the circumstances at the time of the arrest.” Consistent with its oral instructions to consider the question of damages if the jury decided the issue of liability in one or more respects in favor of the plaintiff, Part B then instructed the jury to state the amount of compensatory damages that were proximately caused by the acts of Defendant for any claim as to which the jury had answered “Yes” to the interrogatory in Part A. Thus, under the directions of the questionnaire, the jurors were required to state the compensatory damages proximately caused by a defendant’s wrongful conduct notwithstanding a finding of qualified immunity as to such claim.
After a period of deliberations, the jury announced that it had reached a decision and returned the verdict form, signed by the foreperson. The jury completely exonerated the defendant Mable. It exonerated Labonia, on every claim except use of excessive force, answering ‘Yes” to question A2, thus indicating its finding that Labonia violated Plaintiffs right under the Fourth Amendment to be free of excessive force. As to this claim, however, the jury also answered question A2(a) stating that Labonia “proved ... entitlement to qualified immunity by proving [his] reasonable and objective belief that the force used was reasonable under the circumstances at the time of the arrest.” Consistent with the instruction to answer question B 1 on proximately caused damages if the jury gave a “Yes” answer to any question in Part A, the jury entered $12,078.61 as the “amount of compensatory damages [Plaintiff has] proved were proximately caused by” Labonia’s wrongful acts.
The court then polled the jurors and, on the basis of the jury’s “No” answers as to every claim other than the claim of excessive force against Labonia, accepted the verdicts as resolving these other claims. As for the claim that Labonia used excessive force, each juror affirmed that it was the juror’s intention to answer that Labo-nia violated Plaintiffs right to be free from excessive force and that Labonia was entitled to qualified immunity for the claim of excessive force on the basis of his objective and reasonable belief that the force he used was reasonable in the circumstances. The court then instructed the jury that no damages could be awarded against Labo-nia if he proved an entitlement to qualified immunity. The court told the jurors to return to their deliberations to assure themselves that they had answered the pertinent questions correctly. Treating the jury’s answer to question B1 as if it represented a general verdict (an award of $12,078.61 in damages) rather than the answer to a special verdict question asking the factual question what damages were proximately caused by Defendant’s use of excessive force, irrespective of Defendant’s entitlement to . qualified immunity, the court instructed the jury to strike the answer to B1 if Labonia was entitled to qualified immunity on the claim of excessive force.
The jury then sent the court a note stating, “We were trying to compromise among very rigid positions-wanted expenses incurred paid to Mr. Aczel and the policeman absolved of liability. Now we believe we can’t do both-is this true?” The *56 district court confirmed that the jury could not do both. The jury’s note -also asked whether the jurors could reopen claims their verdict had resolved, which the court refused. The court instructed the jury to resume deliberations on the excessive force claim. When the jurors advised that they could go no further, the court discharged the jury. As the jury had made no change to its findings on the verdict form, it continued to report the findings that Labonia used excessive force, that his use of excessive force caused damage to Aczel in the amount of $12,0.78.61, and that Labonia had proved entitlement to immunity.
Defendants moved for judgment as a matter of law, and Plaintiff moved for a new trial as to all claims, contending the verdicts should be voided by reason of inconsistency. The district court denied Defendants’ motion for judgment as a matter of law and granted Plaintiffs motion for - a new trial. Both parties appealed.
During pendency of that first appeal, the district court issued an additional order clarifying and articulating the reasons for its decisions on the parties’ motions for judgment and new trial. The district court explained that the new trial was granted only with respect to Plaintiffs claim of excessive force against Labonia and Labonia’s entitlement to qualified immunity. The district court also noted that the verdicts on excessive force and on qualified immunity were not inconsistent. Potential inconsistency existed only because, as the court viewed it, the jury awarded compensatory damages. Expressing second thoughts on the wisdom and propriety of its new trial order, the court further stated, “In retrospect, it may have been more proper for the Court to simply have accepted the verdict as to the excessive force and qualified immunity claims and to have rejected the damages award, thereby eliminating the inconsistency.”
On March 27, 2008, this court issued an unpublished summary order, which affirmed the denial of Labonia’s motion for judgment as a matter of law, dismissed the remainder of the appeals for lack of appellate jurisdiction due to lack of a final judgment, and remanded the case to the district court. Aczel v. Labonia, 271 Fed. Appx. 73 (2d Cir.2008). As for the denial of judgment based on qualified immunity, we explained that, once the court had vacated the jury’s decision on this issue, it was left with a record of conflicting evidence and no jury finding, which precluded judgment as a matter of law. Id. at 75. However, noting the district court’s interim expression of misgivings about its resolution of the case, we hinted, “Nothing in this decision bars the district court from revisiting its earlier ruling as to whether the verdict form responses can be reconciled.” Id.
Labonia then moved under Fed.R.Civ.P. 60(b) for reconsideration and for judgment as a matter of law. The district court concluded that its proper course of action was to accept the jury’s finding that Labo-nia was entitled to qualified immunity, and on this basis enter judgment in Labonia’s favor. Plaintiff brought this appeal.
DISCUSSION
I. Plaintiffs Motion for New Trial
Plaintiff contends the district court erred in denying his motion for a new trial. The jury, however, found facts which entitled Defendant to qualified immunity. Unless some flaw in the proceedings necessarily invalidated that finding, the, district court acted within its discretion in relying on it to grant judgment to Defendant.
Plaintiff argues that the jury’s verdict cannot be sustained or relied on in any *57 respect because it exhibited internal inconsistency in awarding damages while at the same time finding that Defendant was entitled to qualified immunity. He relies on Finnegan v. Fountain, 915 F.2d 817 (2d Cir.1990), in which this court vacated a judgment entered pursuant to a jury verdict due to the irreconcilability of the jury’s findings. His reliance on Finnegan is unjustified, as the facts here are quite different. In Finnegan, the jury found that the defendant police officer was entitled to qualified immunity because he “reasonably believed that he was acting in good faith.” Id. at 819. The following day, however, the jury awarded punitive damages against that officer finding that he acted “maliciously or wantonly or oppressively.” Id. We explained that the latter finding plainly contradicted the former. We therefore remanded for a new trial. Id. at 821.
Although there is superficial similarity, the difference between this case and Finnegan is crucial. The Finnegan jury’s finding that the defendant “reasonably believed that he was acting in good faith” could not be reconciled with its finding that he acted “maliciously or wantonly or oppressively.” By definition, one who acts “maliciously” does not reasonably believe he is “acting in good faith.” Because the finding of the defendant’s reasonable belief that he acted in good faith was contradicted by the jury’s finding that he acted maliciously, the finding of good faith could not be credited, so that no basis remained for finding qualified immunity. The finding of malice was similarly undermined by the finding of good faith. Upon invalidation of the jury’s mutually contradictory findings, there were no surviving facts found by the jury that mandated any resolution of the case. Accordingly retrial was the solution.
Here, in contrast, there was no inconsistency in the jury’s factual findings. Those factual findings were (a) that Labo-nia used excessive force and (b) that Plaintiff suffered some damages caused by that use of excessive force, but that (c) Labonia reasonably believed his conduct was justified in the circumstances and was therefore entitled to qualified immunity. There is no inconsistency in those findings. If a police officer uses excessive force in violation of a plaintiffs constitutional rights, it is to be expected that the victim will suffer harm proximately caused by the excessive force. If, however, the police officer proves the facts that entitle him to qualified immunity, under Harlow judgment must be entered in his favor, notwithstanding his having violated the plaintiffs rights and caused damages.
The crucial finding was of facts that entitle Labonia to immunity. If the jury’s findings to that effect are credited, under Harlow they mandate judgment in favor of Defendant, regardless of whether Defendant violated Plaintiffs rights and caused him damages. In Finnegan, we ruled that the comparable finding could not be credited because it was contradicted by the jury’s finding of malice. Here, the jury made no inconsistent finding to cast doubt on whether it had truly found entitlement to immunity. In his effort to persuade us that the jury’s finding of entitlement to immunity was contradicted and should not be credited, Plaintiff mischaracterizes the verdict form and the specific questions and instructions written on it. Plaintiff characterizes the answer to B 1 as if it were a general verdict, awarding compensatory damages to Plaintiff. His argument runs, essentially: The jury was told that Defendant could not be held liable for damages if Defendant acted with a reasonable good faith belief which entitled him to qualified immunity. Thus, the jury’s award of a general verdict giving damages to Plaintiff *58 necessarily implies a finding that Defendant was not entitled to qualified immunity. That finding necessarily contradicts, discredits, and invalidates the finding that Defendant was entitled to qualified immunity, and, as in Finnegan, requires a new trial.
The problem with Plaintiffs argument is that it is based on a mischaracterization of the jury’s answers on the verdict form. Question B1 did not call for a general verdict. The question was not whether the jury found Defendant liable to Plaintiff, much less what compensatory damages it awarded on the basis of that liability. The verdict form given by the court to the jury called for a special verdict asking the jury to determine the facts, as authorized by Rule 49(a). See Fed.R.Civ.P. 49(a) (“The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact.”); also Black’s Law Dictionary 1696— 97 (9th ed: 2009) (defining “general verdict” as “A verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions” and “special verdict” as “A verdict in which the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict”). The form instructed the jury to state the amount of damages proximately caused by Defendant’s use of excessive force. According to the form, the jury was to follow that instruction regardless of whether the jury found Defendant entitled to qualified immunity. The jury’s filling in of a dollar amount representing harm caused by the excessive force therefore in no way contradicted the jury’s finding that Defendant was entitled to immunity. The jury’s answer represented a finding of fact as to the damages caused by Labonia’s use of force and not an award of damages, which the verdict form did not request or call for. The finding that La-bonia’s use of excessive force caused damage to Aczel in the amount of $12,078.61 did not contradict the finding of facts which entitled Labonia to immunity from judgment. They addressed different issues.[1]
Nor is this conclusion affected by the jury’s note responding to the court’s supplemental comments. In its note, the jury expressed frustration arising from conflicting objectives which the jury wished to compromise. The jury said it wanted to reimburse Plaintiff for expenses he incurred but wanted also to absolve Officer Labonia. The jury recognized in its note that it could not do both, and ultimately made no change in its verdict form. The fact that the jury expressed a desire to reimburse Aczel’s expenses did not discredit its finding that Labonia was entitled to qualified immunity, which each juror confirmed upon the polling of the jury, and which the jury left untouched when the court offered the opportunity to change the findings.
Judge Pooler, in her dissenting opinion, argues first that, contrary to what was unmistakably written on the verdict form, we should construe the answer to Question B 1 as a general verdict awarding damages because the court’s instructions to the jury *59 occasionally referred to an award. If the jury wanted to award damages to Plaintiff and tried to do so in entering the figure $12,078.61, Judge Pooler argues, that contradicts its finding of qualified immunity because the jury had been told that Plaintiff could not win a verdict if Labonia was entitled to qualified immunity.
We reject her argument for two reasons. As a first response, Judge Pool-er’s contention that the answer to Question B1 expressed an anomalous award of damages, rather than the answer to a factual question put by the form is mere speculation. An appellate court should not invalidate a judgment entered on the basis of a facially valid and proper jury verdict and require a costly and wasteful retrial merely because of a speculative possibility that facially consistent jury findings might have represented an inconsistency. See Akermanis v. Sea-Land Serv., 688 F.2d 898, 906 (2d Cir.1982) (“[Ajbsent obvious inconsistencies” in the special verdict, a court should presume the jury acted lawfully and should not order a retrial.).
Judge Pooler’s argument suffers from a further flaw. Even if we viewed the answer to Question B1 as expressing the jury’s desire to award damages, that would not necessarily contradict and invalidate its finding of the facts supporting Labo-nia’s immunity, which each juror reconfirmed when polled. The case would still be different from Finnegan, where one crucial jury finding was unreconcilably contradicted by another. At most, by awarding damages in circumstances where the court had explained to the jury that Defendant could not be liable, the jury would have raised a possibility that it did not really find the facts underlying immunity as stated in its answer to question A2(a). It would be at least equally likely, however, that the jury found the facts which gave rise to qualified immunity, as it said it did, but nonetheless out of sympathy hoped to make an award that would reimburse Plaintiffs expenses. The jury’s desire to award damages in spite of its finding of Defendant’s entitlement to immunity would be contrary to law. The district court could properly strike it and enter judgment on the basis of the factual findings which entitled Defendant to immunity.
The Rules expressly provide that when a general verdict is inconsistent with the jury’s findings in the special verdict, among the options available to the court is to approve an appropriate judgment according to the facts established by the special verdict answers, notwithstanding the general verdict. Fed.R.Civ.P. 49(b)(3)(A). Where the circumstances raise no more than a speculative possibility of incompatible inconsistency in the jury’s verdict and the trial judge has concluded that the explicit finding of facts establishing entitlement to qualified immunity should be credited, the judge surely acts within the permissible scope of discretion in sustaining the jury’s finding and entering judgment on it, rather than scrapping the results of the trial and ordering that the case be retried. If the jury’s award of damages may represent a desire on the jury’s part to make an award of damages that was not justified by the law or the court’s instructions, there is no impropriety or abuse of discretion in the district court’s striking of the illegal award and entering judgment in favor of the defendant based on the jury’s finding of entitlement to qualified immunity. See Gallick v. Balt. & Ohio R.R. Co., 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963) (Courts should harmonize a jury’s special verdict answers “if it is possible under a fair reading of them.”); also Turley v. Police Dep’t of City of N. Y, 167 F.3d 757, 760-61 (2d Cir.1999) (When faced with inconsistent *60 special verdicts, a court generally should try to interpret the verdict in a manner which allows reconciliation and upholding of the jury’s verdict, if possible.).
An instructive, if improbable, analogy might be found if a district court judge, at a bench trial, found that the defendant was not liable to the plaintiff but nonetheless awarded damages based on the judge’s perception that the defendant had behaved nastily (although not illegally) toward the plaintiff. On appeal, in all likelihood, we would not order a new trial by reason of the inconsistency, but would merely strike the illegal damages award and direct the entry of judgment in favor of the defendant. The answer should not be different where a jury unanimously makes factual findings which require judgment in the defendant’s favor but nonetheless insists on making a legally baseless award of damages to the plaintiff.
Judge Pooler asserts that this analogy to a trial judge is not apt because, unlike the case of the judge who makes fact findings but renders a verdict that is not compatible with the facts he has found, the jury here found no facts, but rather compromised the conflicting views of different jurors. Judge Pooler’s insistence that the jurors, contrary to their answers on the verdict form and to the court’s poll, were really in disagreement on Labonia’s entitlement to immunity is based on nothing more than speculation. It is indeed possible that the verdict represented a compromise between jurors who believed Labonia had proved entitlement to immunity and others who believed he had not. In fact, that possibility exists in virtually every case in which a plaintiff receives a jury award of less than the plaintiff was seeking. One never knows for sure what has happened in the secrecy of jury deliberations. Judge Pooler’s speculation, however, is not the only possible explanation, nor even the most likely explanation for the jurors’ answers. We see no reason to consider it more likely than that the jurors were merely following the instructions on the special verdict form, answering each question as instructed; nor is it more likely than that the jury unanimously found Labonia’s entitlement to immunity, but nonetheless wanted to give some compensation to the abused plaintiff. While it is indeed possible that certain jurors lied when recording and reporting their finding that Labonia had proved entitlement to immunity, the district judge did not believe this to be the case, and we see no reason to reject his analysis. If new trials were required whenever a possibility exists that jurors with conflicting views had compromised, trial would become a hopeless and ineffectual way to settle disputes.
In support of her assertion that the verdict represented an improper compromise between jurors who disagreed on La-bonia’s entitlement to immunity, Judge Pooler relies heavily on the fact that the jury sent the judge a note saying, “We were trying to compromise among very rigid positions-wanted expenses incurred paid to Mr. Aczel and the policeman absolved of liability.” Judge Pooler reads the use of the word “compromise” as necessarily meaning that the compromise in question was between jurors who disagreed whether Labonia was entitled to immunity. While the word “compromise” is often used in the context of resolving disagreements among different persons, that is not its only meaning. A single individual can seek a compromise as among conflicting desires, and so can a unanimous jury, notwithstanding its unanimity on a crucial factual finding. The jury’s note neither said, nor suggested, that some jurors wanted to rule for Plaintiff and others for Defendant. Rather, on its face, the note appears to say that the jury (as a whole) was struggling to find the *61 proper compromise between the jury’s desire to cover Plaintiffs expenses and to absolve the police officer, while recognizing that, under the law explained by the judge, it could not do both. Judge Pooler’s contention that the jury note revealed an illegal compromise between jurors who would award damages to Plaintiff and jurors who would exonerate Defendant is based on mere speculation and does not justify our mandating a retrial. See Ajax Hardware Mfg. Corp. v. Indus. Plants Corp., 569 F.2d 181, 184 (2d Cir.1977) (Even if juror misconduct such as a compromise verdict is a possibility in a given case, a new trial cannot be sustained when “there is an equally reasonable and perhaps even better explanation which involves no jury misconduct.”).
In summary, the district court credited the jury’s finding of facts that entitle Defendant to immunity and entered judgment on that basis. We see no illogic or abuse of discretion in that action. Based on a pyramid of speculations, Judge Pooler contends the court could not lawfully credit the jury’s finding of facts supporting Labo-nia’s immunity. She speculates that, contrary to the express terms of the jury’s findings, these findings really expressed an award. She further speculates that the jury’s “award” of damages cannot be understood as a desire to reimburse Plaintiffs expenses notwithstanding Defendant’s entitlement to immunity but must be understood as representing findings that contradict the jury’s expressly stated finding of the facts giving rise to Labonia’s immunity. Finally, Judge Pooler invokes the further speculation that the jurors were never in agreement on Labonia’s immunity but improperly compromised their differences. We express no view on whether the district court would have acted within its discretion if it had regarded Judge Pooler’s speculations as sufficiently likely to adhere to its initial ruling ordering a new trial. The district court instead credited the jury’s findings at face value and entered judgment on that basis. There was no abuse of discretion in that decision. In fact, it was eminently sensible.
II. Motion for Reconsideration
Plaintiff also argues that the district court erred proeedurally and substantively in granting Labonia’s motion for reconsideration. We disagree. A motion for reconsideration may be granted for “any ... reason that justifies relief.” Fed. R.Civ.P. 60(b)(6). The Supreme Court has noted that this catch-all provision of Rule 60(b) allows courts to vacate judgments whenever necessary to accomplish justice, although such relief should be granted only in extraordinary circumstances. Liljeberg v. Health Serv. Acquisition Corp., 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). “A motion seeking such relief is addressed to the sound discretion of the district court with appellate review limited to determining whether that discretion has been abused.” Nemaizer v. Baker, 793 F.2d 58, 61-62 (2d Cir.1986).
Plaintiff first contends that Labo-nia’s motion for reconsideration should have been denied as untimely. A motion for reconsideration under Fed.R.Civ.P. 60(b)(6) “must be made within a reasonable time.” Fed.R.Civ.P. 60(c)(1). The district court denied the Defendants’ prior posttrial motion for judgment as a matter of law on September 22, 2006 and Defendants timely appealed this ruling. While the appeal was pending, the district court was without jurisdiction of the case. Fort Knox Music Inc. v. Baptiste, 257 F.3d 108, 111 (2d Cir.2001). This court remanded the case to the district court on March 27, 2008. Four days later, on March 31, 2008, Labonia filed his motion under Rule 60(b) *62 for reconsideration. The motion was made within a reasonable time and was therefore timely.
Plaintiff next contends that the district court erred in granting the motion because Labonia did not establish extraordinary circumstances, as required by Lilje-berg. We disagree. While Defendants’ initial appeal was pending in this case, the district court issued an order in which the district court expressed that “[i]n retrospect, it may have been more proper for the Court to simply have accepted the verdict as to the excessive force and qualified immunity claims and to have rejected the damages award, thereby eliminating the inconsistency.” This court then remanded the case to the district court and stated, “Nothing in this decision bars the district court from revisiting its earlier ruling as to whether the verdict form responses can be reconciled.” Aczel, 271 Fed.Appx. at 75. In light of the district court’s reconsideration while the appeal was pending, this court’s explicit permission to the district court to revisit its earlier ruling, and the very unusual facts of this case, the district court was within its proper range of discretion in considering the circumstances sufficiently extraordinary.
CONCLUSION
The judgment of the district court is affirmed.

. It is not surprising that Plaintiff has misconstrued the jury’s verdict in view of the fact that, at least temporarily, the district court did so as well. On receipt of the verdict form, the court was apparently surprised to receive an answer stating Plaintiff’s damages together with an answer finding qualified immunity that required judgment in favor of Defendant. The court failed at that point to recognize that its instructions written on the verdict form called for an answer to the damages question by reason of tire “Yes” answer as to the use of excessive force, notwithstanding the finding of Labonia’s entitlement to qualified immunity-